UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

NATURAL RESOURCES DEFENSE
COUNCIL, et al.,

       Plaintiffs,

  v.

KIRK C. RODGERS, etc., et al.,

       Defendants.

                                      /

NO. CIV. S-88-1658 LKK

O R D E R

On April 28, 2005, the parties were directed to brief two questions: (1) whether the "planning mandate" of § 3406(c)(1) of the Central Valley Project Improvement Act (CVPIA) might preempt California Fish and Game Code § 5937 as applied,[1] and (2) what the appropriate scope of the court's remedial authority is under

////

---

[1] The order asked "whether Section 5937 preempts the planning mandate of Section 3406(a) of the CVPIA." This was a typographical error, and the parties briefed the correct issue. The intervenors, however, perceived that the question, as posed, addressed the power of the court under the Administrative Procedure Act. Their position as to that issue is discussed in relation to that issue.

1

the Administrative Procedure Act (APA).[2]  I decide these issues based upon the briefs submitted by the parties without oral argument.

## I.
## STANDARDS

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); See also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Secor Limited v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995) The parties agree that the questions posed are both purely questions of law and thus both questions are appropriately resolved through summary judgment.

## II.
## BACKGROUND

This court first examined whether the CVPIA preempted the application of § 5937 in an order dated October 12, 1993.  In that order, the court concluded that Congress had not intended

---

[2] The plaintiffs raised this issue as a motion in limine, or alternately as a supplemental motion for summary adjudication. Motions in limine address evidentiary questions and are inappropriate devices for resolving substantive issues. See 75 Am. Jur.2d Trial § 99 (2004) (explaining that motions in limine are improper vehicles to raise motions for summary judgment or motions to dismiss because "[m]otions in limine are not to be used as a sweeping means of testing issues of law," Provident Life & Accident Ins. Co. v. Adie, 176 F.R.D. 246, 250 (D. Mich. 1997) (motion in limine cannot be used as substitute for motion for summary judgment)). Accordingly, the court treats the motion for what it is, a motion for partial summary adjudication. Happily, this causes no problem as the parties have adequately briefed the merits of the two legal questions posed.

to generally "preempt state water law or otherwise change the federal/state water partnership described in United States v. California, 438 U.S. 645 (1978)." Order filed Oct. 12, 1993 at 33. The court also concluded that the there was no conflict between the requirements of § 3406(c)(1) and § 5937 on the face of the statutes. Id. at 35.

As to the latter matter, the court noted that while § 3406(c)(1) set out a careful approach to the restoration of wildlife below Friant Dam, "it seems clear that the two statutes may be reconciled; i.e., that compliance with both the CVP Improvement Act and section 5937 is not only possible, but required." Id. at 34-35. The court determined that the prohibition in the section against releases for the "restoration of flows between Gravelly Ford and the Mendota Pool. . . without a specific Act of Congress," by its plain terms only applied to actions done "as a measure to implement" the CVPIA and not to other releases such as those which might be required by § 5937 applicable to the federal government by virtue of § 8 of the Reclamation Act. Id. at 35. "Nothing compels the view that [§ 3406(c)(1)] replaces applicable state standards since under the statute the Secretary is obligated to conform his conduct to state standards." Id. at 37 (citing § 3406(b) which provides that "immediately upon enactment of this title, [the Secretary] shall operate the Central Valley Project to meet all obligations under State . . . law.").

////

Additionally, the court rejected the argument that the assessment fee, which § 3406(c)(1) required to be paid in lieu of releases under the CVPIA, restricted the ability of the court to require releases under § 5937. Id. at 37.[3]

Ultimately, the court reasoned that the "federal requirement need not preclude application of a state requirement or stand as an obstacle to development of such a plan. Rather, the Secretary's comprehensive plan may be premised upon the Bureau's compliance with section 5937." Id. at 39.

On appeal, the Ninth Circuit affirmed that § 5937 was not facially preempted by the CVPIA. NRDC v. Houston, 146 F.3d 1118, 1131 (9th Cir. 1998). The opinion observed that "there is no clear directive in the CVPIA which preempts the application of § 5937 if the state law could be implemented in a way that is consistent with Congress' plan to develop and restore fisheries below the Friant dam in a manner that is 'reasonable, prudent, and feasible.'" Id. at 1132.

Finally, this court addressed CVPIA preemption again in 2004, noting that "it may be that the reasonableness provision of the CVPIA ultimately insulates the Bureau from the full rigor of the state statute," but noting that this "possibility,

---

[3] The federal defendants' brief claims that § 3406(c)(1) preempts § 5937 because the Friant water users would have to pay the restoration surcharge required by § 3406(c)(1) while also having to release water in order to comply with § 5937. It is law of the case that the surcharge does not preempt the application of § 5937, see id. at 37-38, and thus, in the absence of changed circumstances or changed binding authority, this contention will not be considered in this opinion.

4

however, is a question of remedies, not of preemption," per se. NRDC v. Patterson, 333 F.Supp.2d 906 at 919 n. 8 (E.D. Cal. 2004).

The court reiterates that it will not reexamine the facial preemption of CVPIA § 3406(c)(1) since that question has been settled and is law of the case. I note, however, that at the remedies stage, the evidence may demonstrate, as the defendants contend, that the state statute cannot be applied consistent with federal law, and thus is preempted by virtue of a successful "as applied" claim.

### III.

### THE RELATION BETWEEN § 3406(c)(1) and § 5937

The CVPIA directs the Secretary to develop a "reasonable, prudent and feasible" plan to "address fish, wildlife, and habitat concerns on the San Joaquin River." See § 3406(c)(1). This plan is to be reviewed, and possibly modified, by Congress prior to implementation. Though the statute requires the Secretary to prepare the plan "no later than September 30, 1996," it has yet to be done. Thus, Congress has also not yet been presented with a federal plan to restore the flow beneath Friant Dam.

The narrow question the court is asked to resolve here is whether § 3406(c)(1)'s requirement that the "reasonable, prudent and feasible" plan the Secretary is directed to prepare, also limits the releases which may be required by § 5937 of the ////

5

California Fish and Game Code.[4]  The plaintiffs argue that the reasonableness standard has no impact on § 5937 unless, and until, the plan mandated by the statute is actually created. With the qualification that any plan is subject to Congressional review, it appears to the court that this reading is consistent with the plain language of the statute, with previous decisions by this court, and with the Ninth Circuit's opinion in <u>NRDC v. Houston</u>, 146 F.3d 1118 (9th Cir. 1998).

   The federal defendants ask the court to look beyond the plain meaning of the statute in order to find that § 3406(c)(1)'s "reasonable, prudent and feasible" language might itself limit (or altogether override) the need for the Bureau to comply with § 5937, whether or not a plan has actually been prepared.  Of course, the rule is that "'the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, . . . the sole function of the courts is to enforce it according to its terms.'"  <u>Maximum Comfort, Inc. v. Thompson</u>, 323 F.Supp.2d 1060, 1067 (E.D. Cal. 2004) (quoting <u>Caminetti v. United States</u>, 242 U.S. 470, 485 (1917)).[5]

---

[4] It may well be that this issue is a tempest in a teapot. It is difficult for the court to believe that it would issue any order pursuant to its equitable power which was not "reasonable, prudent and feasible," whether required by the CVPIA or not. Nonetheless, and for whatever reason, the parties have insisted upon the issue's importance and, accordingly, the court addresses it in the text.

[5] As I explain in the text, the plain meaning of the statute precludes the federal defendants' contention.  Moreover, even if

6

     A straight-forward reading of the statute demonstrates that the "reasonable, prudent and feasible" standard does not apply to § 5937 at all.  Rather, the statute clearly provides that it is the plan which the Secretary is to prepare which must be "reasonable, prudent and feasible." It must, however, also address "fish, wildlife and habitat concerns on the San Joaquin River."  Given these two statutory requirements, it seems inevitable that any proper plan developed consistent with the Bureau's obligations under § 3406(c)(1) would recognize the federal government's obligation under § 5937.  Put differently, in the absence of impossibility, if the Bureau develops a proper plan, the reasonable, prudent and feasible standard would likely satisfy obligations under the state statute.  Without the plan, however, the "reasonable, prudent and feasible" language has no direct impact on the Bureau's need to comply with § 5937.

     On the other hand, this court, and the Ninth Circuit, have both noted that the plan required under § 3406(c)(1) *might* preempt or somehow limit the application of § 5937.  It is not possible to go any further at this point, however, since the government has failed to meet its obligation to develop a plan, much less to do so by the statutory date.

////

---

the court were to conclude that there was an ambiguity requiring construction of the statute, it appears that the federal defendants' contention could not be adopted since it violates the well-established canon that repeals by implication are disfavored. Ruckelshaus v. Monsanto, 467 U.S. 986, 1017 (1984).

Indeed, what effect a plan would now have, given the Congressional cutoff date, might itself present a difficult legal problem.  The court need not trouble itself with that issue, given the absence of any plan, timely or not.  In any event, the structure of the Act itself and the precedent addressing preemption of state law under the Reclamation Act both indicate that it is appropriate to leave the question of consistency open until the point that the Secretary formally prepares a plan, if one is ever prepared.

The Supreme Court, has explained that Congress had "consistently reaffirmed that the Secretary should follow state law in all respects not directly inconsistent" with the directives of the statute. <u>California v. United States</u>, 438 U.S. 645, 678 (1978); <u>see</u> <u>also</u> <u>NRDC</u>, 146 F.3d at 1132.  Indeed, Congress' most recent visitation of the issue reaffirmed the Court's understanding of Congressional intent by the CVPIA requirement that the Secretary "operate the Central Valley Project to meet all obligations under State and Federal law." § 3406(b).

This decision to wait until the claim is ripe is precisely what the Ninth Circuit suggested the court do in <u>NRDC v. Houston</u>.  146 F.3d at 1132.  The panel, agreeing with this court's earlier holding that the CVPIA was not facially preemptive, observed that: "[t]here is no clear directive in the CVPIA which preempts the application of § 5937 if the state law could be implemented in a way that is consistent with Congress'

8

plan to develop and restore fisheries below the Friant dam in a manner that is 'reasonable, prudent, and feasible.'" Id. (emphasis added).  The panel recognized that it cannot be decided if the CVPIA preempts § 5937 in application until Congress' "reasonable, prudent and feasible" plan has been prepared.

Finally, although I decline to decide if the plan is inconsistent with § 5937 without an actual plan to work with, it does not follow that the parties cannot present evidence on what is reasonable and what is feasible during the remedies phase. As the parties have duly noted, the court has an independent obligation to consider the reasonableness of the remedy required by § 5937 pursuant to its duty to ensure compliance with California Constitution, Article X, section 2.  See Joslin v. Marin Municipal Water Dist., 67 Cal.2d 132, 139-140 (1967); Nat'l Audubon Soc'y v. Sup. Ct, 33 Cal.3d 419, 443 (1983)). Moreover, the court has the same obligation in exercising its equitable discretion in connection with a request for injunctive relief.  See Tennessee Valley Authority v. Hill, 437 U.S. 153, 193 (1978) ("As a general matter it may be said that since all or almost all equitable remedies are discretionary, the balancing of equities and hardships is appropriate in almost any case as a guide to the chancellor's discretion." (internal quotations removed)); Weinberger v. Romero-Barcelo, 456 U.S. 305, 314-15 (1982); Owner Operator Independent Drivers Ass'n, Inc. v. Swift Transp. Co., 367 F.3d 1108, 1111 (9th Cir. 2004).

## IV.

**REMEDIAL AUTHORITY UNDER THE ADMINISTRATIVE PROCEDURE ACT**

This court has already determined that it has subject matter jurisdiction to hear this claim as the statutory obligation posed by § 5937 via § 8 of the Reclamation Act is both mandatory and discrete. NRDC v. Patterson, 333 F.Supp.2d 906, 916 (E.D. Cal. 2004). Section 706 of the APA provides that the court shall "compel agency action unlawfully withheld" and "shall hold unlawful and set aside agency action . . . not in accordance with law." The court must now determine the extent of its remedial authority under the relevant provisions of the APA.

The federal defendants argue that review under the APA is unavailable because § 5937 is drawn in such a manner that the court has "no meaningful standard against which to judge the agency's exercise of discretion." Fed. Defs' Br. at 15 (quoting Heckler v. Chaney, 470 U.S. 821, 828 (1985)). Therefore, they argue, that the court must leave it up to the Agency to determine how to comply with the law. As I now explain, Heckler is inapplicable to the instant issue.

Heckler involved §701(a)(1) of the APA which provides that APA review is unavailable where "agency action is committed to agency discretion by law." As Heckler noted, the "committed to agency discretion" exception is a "very narrow" one and is only to be used in "those rare instances where statutes are drawn in such broad terms . . . that there is no law to apply." Id. at

830 (internal quotations omitted).

Although it is true that § 5937 does not state exactly how much water is sufficient, or what would be "good condition," this is by no means a statute that provides no guidance to the decision-maker. See <u>California Trout v. SWRCB</u>, 207 Cal.App.3d 585 (1989) and <u>California Trout v. Superior Court</u>, 218 Cal.App.3d 187 (1990). Here, the agency may have the responsibility of administering the Central Valley Water Project, but that responsibility is limited by the requirement that in doing so it comply with state law.

Section 5937 applies to "the owner of any dam." Put directly, under §8, the Bureau stands in relation to § 5937 as if it were a private party. Thus, the government in its operation of Friant Dam stands in the same relationship to state law as PG&E does in its operation of one of its dams. Surely the government cannot mean that because PG&E has general discretion as to how it runs its dams, it is up to PG&E to determine what § 5937 requires and what would constitute compliance.

The intervenors' argument that the sole remedy available to the court is referral back to the Agency to develop a plan falters on the same observation. In relation to § 5937, the Bureau here is only the owner of a dam, and it is not the agency charged with administering the state statute. While the Bureau has an obligation under the CVPIA to develop a plan, its obligation under § 5937 is unaffected by that obligation.

"[W]here two statutes are 'capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'" Ruckelshaus v. Monsanto, 467 U.S. 986, 1018 (1984).

Moreover, nothing suggests that the agency has any particular expertise in determining what constitutes compliance with § 5937. Indeed, its history of ignoring its obligation under the statute suggests the contrary. Since § 5937 does not grant the power of administration to the Bureau, it is up to the court to determine what § 5937 requires of the Bureau as a dam owner. See National Audubon Society v. Superior Court, 33 Cal.3d 419, 426 (1983) (finding that courts have concurrent jurisdiction in water rights disputes with the SWRCB).

As both plaintiffs and Friant defendants argue, the questions what is "good condition" and "sufficient water", are intensely factual in character, and can only be resolved after an evidentiary hearing. Upon determining what the statute requires under the particular facts, the court can then decide what is the appropriate manner of ensuring compliance.[6] That is to say that once the court determines that an agency has failed to take a discrete action that it is required to take, the court may "adjust its relief to the exigencies of the case in

---

[6] Of course, it is not the job of the court to manage the day-to-day operations of the Dam, only to ensure that the Dam is operated in compliance with all state and federal statutes. See Norton v. Southern Utah Wilderness Alliance, 124 S.Ct. 2373, 2381 (2004).

12

accordance with the equitable principles governing judicial action." Sierra Pacific Industries v. Lyng, 866 F.2d 1099, 1111 (9th Cir. 1989) (citing Ford Motor Co. v. NLRB, 305 U.S. 364, 373 (1939)); Hondros v. U.S. Civil Service Comm'n, 720 F.2d 278, 298 ("Accordingly, section 706(1) authorizes injunctive relief to compel [action] arbitrarily or capriciously withheld. . . . Indeed, any other interpretation would render the standards of section 706 meaningless; were it otherwise, the federal courts would be powerless to redress agency action found arbitrary or capricious."); see also Roman v. Korson, 89 F.Supp.2d 899, 906-07 (W.D. Mich. 2000) (noting that without this remedial authority the court could be "transformed into toothless tigers without effective control of lawless agencies.").

## V.

## CONCLUSION

For the above reasons, the court hereby CONCLUDES:

1. The "reasonable, prudent and feasible" standard of § 3406(c)(1) only constrains the development of the Secretary's plan for the San Joaquin; and

2. It is the responsibility of the court to interpret the law as it applies to the facts of this case. Where a violation of § 5937 is found, the statute contains sufficient standards to

////
////
////
////

permit the court to fashion an appropriate remedy in accordance with equitable principles.

IT IS SO ORDERED.

DATED: June 9, 2005.

/s/Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT