IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNSEL, INC., et al., | |
| Plaintiffs, | No. CIV S-88-1658 LKK GGH |
| vs. | |
| KIRK RODGERS, et al., | |
| Defendants. | ORDER |

*Introduction*

On July 15, 2005, the court ordered briefing on whether NRDC, a recipient of inadvertently produced documents from the files of Friant's former general counsel Gary Sawyers, was entitled to review and copy non-privileged documents from that file.[1] The parties

---

[1] At the end of the phone conference, the undersigned had ordered:
1. That the inadvertently produced discs be returned to Friant counsel; all copies of the discs, or printouts therefrom, were either to be returned or destroyed;
2. Counsel for Friant was to preserve all returned materials as they were received from NRDC counsel until further order of the court.
    The undersigned ordered the return of the discs in the interim because it was likely that a good deal of material on the discs was privileged, which would have to be returned in any event, and in order to squelch any allegations that NRDC had done something inappropriate with the discs pending this order. However, return of the discs was without prejudice to NRDC's arguing for return of the non-privileged documents as it colorably asserted that it would have been entitled to retain the non-privileged documents. The court's temporary

have filed the required briefing, and the court issues the following order.

*Facts*

        The facts of the controversy are undisputed for the most part. The parties have produced electronic versions of their initial disclosure productions as ordered in the Discovery Plan Order and Schedule of May 3, 2005. As luck would have it, Friant's electronic production was difficult or impossible to open and read; it was not searchable. Friant forwarded an "improved" version of its initial disclosures; however, as [bad] luck would have it again, Friant's digital reproduction company had also scanned, or otherwise electronically reproduced, the files of Friant's long time general counsel, and inadvertently submitted the counsel files in place of a technically "improved" version of the initial disclosures. These general counsel discs were given to counsel for Friant by the reproduction company with the incorrect designation, i.e., the discs were not the improved version of the initial disclosures as indicated, but rather the discs of the general counsel's files, and presumably containing some privileged material. The mislabeled discs were then produced to NRDC.

        Upon reviewing the newly sent discs, Ms. Poole, counsel for NRDC, and/or others on the NRDC attorney staff, at some point recognized that they had inadvertently been sent possibly privileged material. To their credit, counsel for NRDC contacted counsel for Friant with this information. In the meantime, it appeared that NRDC had further reviewed and made some copies of the documents at issue, but the extent of that copying and whether the copying included privileged materials, is unclear. Evidently at one time in the course of discussions, Friant offered to create a privilege log if all the discs would be returned. However, counsel could not ultimately agree on the procedures for return of the potentially privileged information as well as the non-privileged information. Friant demanded that the entire inadvertent production be

---

order with respect to the return of the discs and all other copied information was an interim logistical order contemplating that Friant might have to return to NRDC the inadvertently produced non-privileged material.

returned. NRDC believed, based on its limited review, that many of the documents were not privileged, and the non-privileged documents, inadvertently produced or not, did not have to be returned. NRDC believed that it was entitled to retain non-privileged documents, and that Friant should produce a privilege log for the inadvertently produced general counsel files, and disputes over the designation could then be adjudicated.

*Discussion*

No party maintains the position that to the extent the inadvertent production of the Sawyer discs contained privileged material, the privilege was waived. The court certainly agrees; the production was inadvertent in every sense of the word, and essentially without fault on the part of Friant, its attorneys, and perhaps even with respect to the digital reproduction company assisting Friant in this case. Accidents, in the absence of negligence, do happen. Because the privileged document part of the inadvertent production is without dispute, the court will not discuss the inadvertent disclosure doctrine with respect to privileged materials. The court turns to the issue at hand—whether NRDC nevertheless is entitled to "retain" (see footnote 1) the non-privileged documents.

Friant first argues that because the inadvertently produced discs of general counsel's Sawyer's files would never have been part of the Rule 26 initial disclosures, NRDC should not reap a windfall benefit simply because of the inadvertent nature of the production. However, NRDC is correct in its rejoinder that it would not have mattered how or for what reason the Sawyer discs were inadvertently produced—the fact is they were produced. Thus, whether the Sawyer discs were inadvertently produced pursuant to a discovery request, summary judgment proceeding, or whether they fell off a truck and were subsequently taken to NRDC, is all fairly irrelevant. Because the court is not assessing fault, after presumptively finding Friant without fault, the particular scenario of inadvertent delivery will not play a part in the court's analysis.

\\\\\

The next Friant argument concerns its contention that NRDC violated the ethics rules of the Eastern District when it continued to review the Sawyer discs once it "knew" that the disc information was privileged. Hence, Friant argues, as an ethical sanction, NRDC should not be permitted to retain any documents. However, California's ethics rules have been adopted by the court as the ethics standards applicable to attorneys, see Eastern District Local Rule 83-180 (e), and California's ethics rules do not proscribe NRDC's conduct—even if counsel continued to review the discs after it recognized that *some* information was privileged. Aerojet General v. Transport Indem. Co., 18 Cal. App. 4th 996 (1993).[2]

Friant's ethical position also misses the point of the dispute herein. This is not a situation where *only* privileged information is at issue, see State Fund v. WPS, Inc., 70 Cal. App. 4th 644 (1999), but the much more complex situation of a hybrid privileged and non-privileged disclosure.[3] In State Farm, the privileged documents at issue were clearly segregated from the bulk of documents delivered in response to discovery obligations. Thus, even if the sanction advocated by Friant is appropriate when only privileged documents are concerned, the sanction is inapplicable in this hybrid situation. NRDC has appropriately cited Aerojet General v. Transport Indem. Co., supra, for the proposition that that counsel who receive inadvertently produced non-privileged information are entitled to review it, and may even have an ethical obligation to their clients to review it. This situation involves competing ethical concerns. In such a situation, an order requiring final "return" of the non-privileged information based on an ethics rules sanction is inappropriate.

Moreover, counsel for NRDC substantially complied with the procedures set forth by State Fund in any event. This case permits further cursory review of inadvertently produced

---

[2] While it is true that California has no written ethical rules on point, the undersigned views the Aerojet General case as filling the gaps.

[3] The court accepts, at this juncture, NRDC's likely representation that not all information within Sawyer's files was privileged. However, the court further addresses infra, the potential irrelevance of non-privileged information.

documents for the purpose of determining what may be clearly privileged and further court proceedings regarding further use of the documents. Id., 70 Cal. App. 4th at 656-57. The undersigned further notes that the precise issue of an attorney's ethical obligations upon receiving inadvertently produced privileged documents is pending before the state supreme court. See Rico v. Mitsubishi Motors Corp., 10 Cal. Rptr.3d (2004) review granted, 14 Cal. Rptr. 3d 210 (2004). So, the ethical conundrum here is much more complicated than the "simple" privileged documents only scenario. NRDC could not be sanctioned given the present state of California law.

      Finally, the ABA formal opinions cited by Friant 92-368 and 94-382, which are secondary ethical opinion materials, which may be relied upon in the absence of California authority, do not persuade in the current context in any event. Both refer to "privileged" or "confidential" materials, e.g., "[w]hen an attorney receives, unauthorized, an adverse party's materials, once the attorney becomes aware of the privileged or confidential nature of the materials, the attorney must refrain from viewing *such materials*." Opinion 94-382. The court views the emphasized words as referring to "privileged or confidential" materials. Any other interpretation would lead to absurd results. If in the course of reviewing transmitted documents, the reviewing attorney happens to come upon some decidedly privileged material, perhaps inadvertently produced, the attorney would have to stop all review—because, who knows, there may be some other privileged material in documents yet to be reviewed—and prejudice his client by adding time (money) and time (delay) in sorting out the transmitter's mistake. This is a situation where NRDC represents that it saw significant, unprivileged documents mixed in with privileged documents. The fact that the entire discs may have been improperly transmitted, a fact unknown for some time to NRDC, does not make privileged–unprivileged materials– , and under

\\\\\

\\\\\

\\\\\

California ethics law, an attorney is free to review such unprivileged materials.[4]

Friant is probably correct in a limited respect that NRDC at all times had a duty to return the original discs no matter what the content. Equating the transmission of property which the sender had no intent to transmit with "lost property," it is clear that under California law the property itself had to be returned because NRDC knew the identity of the owner of the "lost property." See 2 Witkin & Epstein, *California Criminal Law*, 3rd ed. 1988 § 19; Cal. Civil Code 2080. However, the issue here does not revolve about the return of physical property—NRDC does not claim that it is entitled to the originally transmitted discs—the issue concerns the retention of information transmitted—to be copied or remembered.

In sum, the point of the above discussion is not to fashion specific ethics rules for the Eastern District, but to answer Friant's contention that NRDC commited a clear-cut ethical violation for which it should be punished with an order refusing to allow NRDC to retain non-privileged documents. Under present controlling law, no such clear-cut violation took place; the court does not believe any violation took place. NRDC reviewed some information, but when it became concerned that all such information may have been inadvertently produced (despite Friant's transmitted cover assurances that these *were* the new discs which replaced the old), it stopped review and copying and submitted to court guidance after notifying Friant counsel. In the absence of an ethics violation, the court declines to sanction NRDC with an order taking documents away which it might otherwise have a right to retain.

Thus, the court turns to the final point of analysis—do federal discovery rules or case law require the return of the non-privileged information by a person or entity which receives inadvertently sent non-privileged materials. Case law to date provides for no such rule, and if

---

[4] The court recognizes that different bar associations take different positions on this issue of return of any documents inadvertently transmitted, see the discussion of the New York City Bar Assoc. contained as an attachment in Kondakjian v. Port Authority of New York etc. 1996 WL 139782 (S.D.N.Y. 1996); however, the undersigned finds California's stated rule as binding and persuasive.

6

rules may be fashioned by negative implication, NRDC has proffered a case which supports its position.  See <u>Mineba Co. Ltd v. Papst</u>, 370 F. Supp. 2d 297 (D.D.C. 2005):

> The Court is not clear, however, whether Papst continues to assert privilege with respect to all of the inadvertently produced documents or just a subset.  A brief review of the inadvertently produced documents suggests to the Court that at least some of these documents have been improperly characterized as privileged.  For example, PL 332540 is a cover letter from Mr. Schnayer to Georg Papst forwarding a draft letter to Mr. Kurihara. See In Camera Exhibit 6.  A cover letter does not "rest on confidential information obtained from the client." In re Sealed Case, 737 F.2d 94, 99 (D.C.Cir.1984). It therefore is not privileged.
>
> ***
>
> Because the Court is not clear which documents are still at issue, the Court will not conduct a document-by-document analysis at this time..... The Court therefore will refrain from ruling on the question of the privileged nature of these documents pending its ruling in connection with Report and Recommendation No. 29.  The Court is confident, however, that Papst will immediately release any clearly non-privileged documents from this group of inadvertently produced documents.

<u>Id</u>. at 301.[5]

The undersigned has also conducted an independent search and cannot find further federal discussion of the precise issue at bar.  However, the undersigned returns to the California case of <u>Aerojet</u> <u>General</u>, and finds it persuasive in the present context.  (Finding that the receiving attorney had a duty to use non-privileged information on behalf of his clients, and "[i]f the underlying information which respondents sought to prevent plaintiff from using is not privileged, and if such information was revealed to plaintiffs' counsel through no fault or misconduct of his own, plaintiffs and their counsel were entitled to use it." 18 Cal. App. 4th at

---

[5] The court does not find terribly significant NRDC's proffer of cases where a privilege was found to be waived by inadvertent production, and therefore the party in receipt was able to retain the now declared non-privileged document. It appears that the only real issue was whether the privilege at issue had been waived—not what next would happen to the documents should the privilege be found waived. Retention of documents whose status became non-privileged through waiver was an undisputed, foregone conclusion. To that extent, the acceptance of counsel in many cases that an adversary was entitled to retain documents whose privilege was waived, i.e., there was no secondary doctrine of return of inadvertently produced non-privileged documents, indicates the solitary nature of Friant's position.

1005.) Courts do not stand ready to assist a party in rectifying every harmful mistake made, inadvertent or otherwise. Litigants live with their mistakes however accidental except where important doctrines like privilege are implicated, and even then, they may have to live with their mistakes. For example, if a party deponent mistakenly or inadvertently volunteers non-privileged information at a deposition in response to a question which did not call for the information, and the information is very case sensitive, but not privileged, a court will not strike the volunteered information and refuse its use in litigation simply because the party hurt by the mistake declares that his opposition had no "right" to the information. Similarly, if a party in response to a specific discovery request inadvertently sends to his adversary non-privileged information extraneous to that specific discovery request, the sending party is not entitled to return of the information no matter how extraneous to the specific question.

The court finds that NRDC is entitled to "retain," i.e. have returned to it, the non-privileged material inadvertently sent to it, or copies thereof.

Now comes the hardest part—how to determine what is non-privileged. And, as discussed below, the court advises the parties that there is monetary risk associated with their actions. NRDC shall inform the court and counsel in writing no later than August 10, 2005, whether it will formally seek to have the non-privileged documents returned[6]; if NRDC opts to make the formal request, Friant shall prepare and file by August 22, 2005, a detailed privilege log[7], along with precise argument as to why a document, or category of documents is privileged; NRDC may respond by reply no later than August 29, 2005. The undersigned will hear the matter on September 1, 2005 at 10:00 a.m. Friant shall have ready for in camera review an

---

[6] NRDC should exercise good judgment in this respect. If, in fact, the nature of the non-privileged documents spotted by NRDC have the irrelevancy equivalent of Mr. Sawyer's favorite chocolate chip cookie recipe, NRDC should not waste the court's and Friant's time with a proceeding to return meaningless documents. There may be a cost associated with fishing expeditions.

[7] "Privilege" is not limited to attorney-client privilege but encompasses any recognized privilege or immunity from dislcosure.

electronic disc of all contested documents.  Copies of the inadvertently produced documents which are not considered privileged shall be made available to NRDC prior to the hearing.

If NRDC invokes the formal process, and the undersigned finds that Friant has made a significant number of privilege assertions which were meritless, Friant may be subject to significant sanctions.  On the other hand, should NRDC oppose assertions of privilege which cannot reasonably be opposed, NRDC may also be subject to sanctions.

DATED: 8/3/05

/s/ Gregory G. Hollows
_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:gh:035
NRDC1658.ord2