IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NATURAL RESOURCES DEFENSE
COUNSEL, INC., et al.,

      Plaintiffs,           No. CIV S-88-1658 LKK GGH

  vs.

KIRK RODGERS, et al.,

      Defendants.           ORDER

_____/

*Introduction*

As set forth in full in the background to this order, a lengthy saga has ensued with respect to the inadvertent delivery of privileged-in-part general counsel files of Friant Water Users Authority (Friant) to plaintiff NRDC et al. With the previous finding that truly privileged documents would not lose their status as a result of the inadvertent delivery, the end of the saga was initially contemplated to be a decision by the court as to what documents were actually privileged, and which documents might be retained by NRDC because inadvertently produced non-privileged documents were not required to be returned.

In briefing and at hearing, however, NRDC did not argue that certain documents were inherently non-privileged, but rather that otherwise privileged documents had lost their status as such through waiver. That is, the privileged had been lost not because of inadvertent

1

delivery (which had already been decided not to constitute a waiver with unanimous agreement), but because certain privileges were waived as a result of otherwise privileged documents having been shown to testifying witnesses or experts. The nature of the court's hearing had therefore metamorphosed from a determination whether documents were privileged or not, to a determination whether the uncontested privilege was waived.

Perhaps realizing the inevitability of adjudication of the waiver dispute, Friant did not object to the metamorphosis, and opposed NRDC's contentions of waiver on their merits.[1] The court will do likewise.

*Background*

The undersigned borrows from his previous orders on the factual background of the inadvertent delivery of privileged/non-privileged documents.

The facts of the controversy are undisputed for the most part. The parties have produced electronic versions of their initial disclosure productions as ordered in the Discovery Plan Order and Schedule of May 3, 2005. As luck would have it, Friant's electronic production was difficult or impossible to open and read; it was not searchable. Friant forwarded an "improved" version of its initial disclosures; however, as [bad] luck would have it again, Friant's digital reproduction company inadvertently scanned, or otherwise electronically reproduced, the files of Friant's long time general counsel in place of a technically "improved" version of the initial disclosures. These discs were give to counsel for Friant by the reproduction company with the incorrect designation, i.e., the discs were not the improved version of the initial disclosures as indicated, but rather the discs of the general counsel's files, and presumably containing some privileged material. The mislabeled discs were then produced to NRDC.

Upon reviewing the newly sent discs, Ms. Poole, counsel for NRDC, and/or others

---

[1] Friant noted in its brief of 8/31/05 that NRDC was raising the waiver-by-disclosure issue for the "first time in its reply brief" (actually the first brief by NRDC), but Friant went on to oppose NRDC's position only on the merits. The hearing involved a discussion only on the merits.

2

on the NRDC attorney staff, recognized that they had inadvertently been sent possibly privileged material. To their credit, counsel for NRDC contacted counsel for Friant with this information. In the meantime, it appeared that NRDC had further reviewed and made some copies of the documents at issue, but the extent of that copying and whether the copying included privileged materials, is unclear. Evidently at one time in the course of discussions, Friant offered to create a privilege log if all the discs would be returned. However, counsel could not ultimately agree on the procedures for return of the potentially privileged information as well as the non-privileged information. Friant demanded that the entire inadvertent production be returned. NRDC believed, based on its limited review, that many of the documents were not privileged, and the non-privileged documents, inadvertently produced or not, did not have to be returned. NRDC believed that it was entitled to retain non-privileged documents, and that Friant should produce a privilege log for the inadvertently produced general counsel files, and disputes over the designation could then be adjudicated.

        Friant's privilege log was produced subject to a variety of objections including relevance, competence, propriety, admissibility, or any other grounds for exclusion, that they are not within the scope of production required by Fed. R. Civ. P. 26(a)(1)(B), and that NRDC has failed to show good cause as required by the May 3, 2005 court order. All documents for which Friant did not claim a privilege either were produced to NRDC or would be made available to them.

        The court held a hearing on September 1, 2005. At hearing, among other discussion, Friant was directed to file an update regarding a small number of documents which were insufficiently described in the privilege log.

        The documents remaining at issue in the privilege log may be categorized as: (1)

documents relating to retained designated experts Hanson, Moss and Steiner,[2] (2) documents for which NRDC claims that Friant has not provided sufficient information in its log ("documents that allegedly may contain information transmitted by an expert"), (3) documents transmitted to or from a non-retained (employee) expert, and (4) up to nine documents not originally identified by recipient and/or author. Friant's retained experts are Dr. Charles Hanson, Rand F. Hebert, Richard M. Moss, and Daniel B. Steiner.[3] Some of these experts were previous employees of Friant or former consultants, but now designated to testify. Other documents were reviewed by non-retained (employee) experts. See NRDC's Reply, filed August 29, 2005, Exh. A at 3-5. The majority of privileges claimed involve attorney-client, work product, or settlement negotiations privilege.

*Discussion*

      Both parties agree that information considered by an expert witness in forming his or her opinion must be disclosed. They diverge in regard to their interpretation of the term "considered," and how this term is constricted by applicable privilege doctrines.[4]

      The resolution of the dispute comes from two different sources: Fed.R.Evid. 612 and Fed.R.Civ.P. 26(a)(2) which nevertheless must be viewed in conjunction. Fed. R. Evid. 612 provides in pertinent part:

> [I]f a witness uses a writing to refresh memory for the purpose of testifying, either--
>     (1) while testifying, or

---

[2] At the hearing, Friant represented that it had withdrawn its claim of privilege for documents relating to retained experts McKusick and Hebert.

[3] Many of the disputes concerning documents reviewed by these experts have been resolved. Only those disputes remaining will be discussed below.

[4] Friant's assertion that NRDC had to demonstrate "good cause" in order to contest anything on Friant's privilege log misread the court's previous order. The court simply advised that if in retrospect NRDC was unreasonable with respect to attacking Friant's claims of privilege, NRDC might be subject to sanctions. As observed previously, the parties moved beyond the contemplated privilege versus non-privilege issue, and both parties make colorable assertions about waiver/non-waiver.

>   (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice...
>   an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.

The "interests of justice" require production of shown documents when such documents "may fairly be said in fact to have an impact upon the testimony of the witness." Advisory Committee Notes, 1972 Proposed Rules. At time of enactment, the emphasis on the limited scope of disclosure was made even more clear so as to not allow "fishing expeditions" into any writing shown to a witness before testifying. Advisory Committee Notes 1974 enactment.

Rule 612 applies to depositions as well as trial. In re Com Air Disaster Litigation, 100 F.R.D. 350, 353 (E.D. Ky. 1983).

Fed. Rules Civ. P. 26(a)(2) requires disclosure of "the data or other information considered by the [expert] witness in forming the opinions." It *is* important to the outcome of this dispute to emphasize that the issues revolve about *expert* witnesses, and not just any client or lay witness within a privilege's zone of interest who happens to be shown a privileged document.

Cases run the spectrum in determining the extent of a waiver by disclosure to a witness or expert witness.

NRDC cites cases defining considered as coextensive with the terms "supplied" or "furnished" to an expert. See In re Pioneer Hi-Bred, 238 F.3d 1370, 1375 (Fed. Cir. 2001), relying on the Advisory Comm. Note to 1993 Amend. to Fed. R. Civ. P. 26(a)(2) ("Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions– whether or not ultimately relied upon by the expert– are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.") Some cases dealing with "ordinary witnesses" are similarly tough on non-waiver. Disclosure of a document to refresh witness recollection, whether it be before the witness' testimony or during his testimony waives the privilege associated with the document.

Wheeling-Pittsburgh Steel Corp. v. Underwriters Lab., Inc., 81 F.R.D. 8, 9-11 (N.D. Ill. 1978) (waiver of attorney-client privilege).  However, such waiver is limited to the actual communication consulted and not communications surrounding the document waived.  Marshall v. United States Postal Service, 88 F.R.D. 348, 350-51 (D.D.C.1980).  In regard to work product, intentional disclosure of opinion work product to a testifying witness waives that protection. Simon Property Group L.P. v. mySIMON, INC., 194 F.R.D. 644, 646-47 (S.D. Ind. 2000) (citing cases reflecting split among courts).

Other cases take a much harder line concerning waiver of privileges simply by showing a witness a privileged document before his or her testimony– a witness must have in fact "relied upon" the document before a waiver will be found.  Suss v. MSX Int. Engineering Services, Inc, 212 F.R.D. 159 (S.D.N.Y. 2002).  See also Bogosian v. Gulf Oil Co., 738 F.2d 587 (3rd Cir. 1984); Sporck v. Peil, 759 F.2d 312 (3rd Cir. 1985) (refusing to find a waiver of work product by a mere showing of the document to a witness or expert witness).[5]

Still other cases employ a balancing test, although such tests sometimes permit too much of an ad hoc or unpredictable decision.   In Intermedics, Inc. v. Ventritex, Inc., 139 F.R.D. 384, 391 (N.D. Cal. 1991), the court, prior to the 1993 amendments, applied a balancing test to determine whether communications between a lawyer and a testifying expert regarding the subject matter of the expert's proposed testimony could be discoverable.  The test requires consideration of the following factors:

> (1) identify the interests that the work product doctrine is intended to promote, (2) make a judgment about how much those interests would be either (a) harmed by a ruling that the kinds of communications in issue here are discoverable or (b) advanced by a ruling that these kinds of communications are not discoverable, (3) identify the relevant interests that are promoted by Federal Rule of Civil Procedure 26(b)(4) and by Federal Rules of Evidence 702, 703, and 705, and then (4) make a judgment about how much those interests would be either (a) harmed by a ruling that the kinds of

---

[5] Bogosian and Sporck pre-date the 1993 changes to Rule 26(a)(2) and are doubtful authority at this point.

6

>communications in issue here are not discoverable or (b) advanced by a ruling that these kinds of communications are discoverable.

(Id.) This balancing test is also appropriate for attorney-client privileged communications.

The tension between a search for the truth and upholding privileges is one that has bedeviled the courts for decades. Of course, without an emphasis on a search for the truth, our system of litigation would be arbitrary, useless; nevertheless, a party should also be able to prepare his, her or its case in relative peace without having the probing eyes of one's adversary inspecting every doubt, "blocked road," mistake, frank discussion or afterthought. In this case (as in all cases) the undersigned believes that although privileges serve an important role in the litigation process, they are also impediments to the truth seeking process, and should not be expanded beyond their core purpose. United States v. Gray, 876 F.2d 1411, 1415 (9th Cir. 1989). Privileges should not be seen as an "end" in litigation, but simply as one means to a just end.

Therefore, with primary reliance on Rule 26(a)(2), as interpreted by In re Pioneer Hi-Bred, but also in light of Rule 612: (1) when a party determines to disclose otherwise privileged information with a party's testifying expert, there is no valid purpose allowing that expert to testify in matters where the disclosed information had (or in the exercise of common sense, must have had) a substantial impact on the substance of the expert's testimony–but without reference to, or cross-examination on, the otherwise privileged, disclosed information. In a related vein, (2) a previously undisclosed consultant, be that consultant employed by a party or retained, will not be permitted to feign ignorance upon designation to testify as an expert with respect to privileged information, previously known or disclosed, but purportedly "undisclosed" to that expert after his designation, but which nevertheless, in the exercise of common sense has some present, substantial impact (either positive or negative) on the testimony of that witness. That is, the instant litigation will not be decided on a crabbed record, where the potential "real views" of the experts remain unexposed or unchallenged, but rather on a complete, explained

7

record. The parties, and other numerous persons and entities relying on a correct verdict deserve no less.[6]

Finally, Friant is correct that documents prepared within a settlement process, i.e., communications made to the other side for settlement purposes, will be shielded from admission in this litigation. Ed. R. Evid. 408. However, Friant is incorrect that every non-disclosed-to- its-adversary document in its file, which may be germane to a settlement thought process, is thereby shielded from discovery. If the case were otherwise, *every* document in a lawyer's file would be protected from discovery because it *could be* utilized to form a settlement position or reveal analysis. Rule 408 protects settlement *negotiations* from being utilized at trial[7]; it does not serve as a super privilege insulating every undisclosed analysis from seeing the light of day, assuming the otherwise non-privileged or waived privilege status for the document. In other words, the privilege afforded by Rule 408 pertains to communications, not underlying documentation or analysis.

Turning to the documents listed in Friant's privilege log for which NRDC seeks production based on waiver, the court has made the following determinations based on the principles outlined above.

Moss Documents

Richard Moss was the General Manager of Friant Water Users Authority for fifteen years, until August 31, 2001. He became a retained expert after he left Friant. Friant represents that all but three documents were created during the time Moss was General Manager

---

[6] The undersigned need not fashion a rule for non-expert witnesses as the instant motion, even as evolved, only involves disclosures to designated experts, including previously employed or retained consultants which are now designated as witnesses.

[7] Rule 408 precludes admission of evidence of offers or accepting settlement offers from being utilized at trial, and "[e]vidence of conduct or statements made in compromise negotiations." It specifically does not preclude use of otherwise admissible documentation used in the settlement process. Friant does not contend that any of the disputed documents constitute evidence of actual settlement communications between Friant and NRDC.

of Friant and "were not considered by him in developing his opinions for this case." Friant's Response, at 4. Those documents were reviewed, and the court finds that of the documents not allegedly considered by Moss in developing his opinions, some of them must have had some present, substantial impact on his testimony. Based on the two principles outlined above, the court has made the following determinations. It should be noted that the documents have only been reviewed in relation to Moss. If they were considered by another designated, non-retained expert, see infra, they will be disclosed if they meet the tests set forth above.

I. Documents Created During Moss' Employment As General Manager of Friant

A. Documents to be Disclosed Based on Substantial Impact on Moss' Testimony

114, 141, 142, 165, 167, 170, 191, 192, 193, 194, 195, 196, 197, 198, 199, 221, 222, 227, 240, 241, 254, 256, 274, 276.

B. Documents Not to be Disclosed as Not Sufficiently Pertinent to Impact Moss' Testimony

16, 93, 97, 109, 118, 119, 143, 144, 145, 146, 173, 180, 181, 202, 216, 217, 224, 270, 271, 272, 273, 277, 278, 279, 280, 285.

II. Documents Created After Moss' Tenure as General Manager of Friant

The three documents created after Moss resigned as general manager are numbered 128, 149 and 150. Friant contends numbers 128 and 149 do not relate to this litigation. It also argues that as to numbers 149 and 150, Moss did not receive copies of these documents. After review of these documents, the court finds that only document number 128 shall be disclosed because it is sufficiently related to this litigation. Documents 149 and 150 shall not be disclosed.

Hanson Documents

Chuck Hanson has had several assignments for Friant. Recently, he was retained to consult confidentially with Friant's litigation counsel after settlement efforts collapsed in spring, 2003. After that, he was designated as a testifying expert regarding restoration of a

historical fishery below Friant Dam. His previous assignment for Friant occurred prior to the collapse of the settlement effort. He consulted confidentially with Friant's general counsel, Sawyers, regarding the quantity of water needed to be released from the Friant Dam in order to accomplish fishery restoration goals under discussion at the time.

In contrast to the Moss documents, for which Friant represented that documents were not considered by Moss in developing his expert opinion, Friant's argument regarding the Hanson documents contain no such representation. Friant's omission on this point is appreciated, especially because review of this group of documents leads to the conclusion that it would be a strain to represent that Hanson did not consider them in forming his opinion.

Because finding a waiver of highly sensitive documents, e.g., Document 51, would have a significant impact on Friant's case, the court proposes a choice to Friant. In the interests of justice, <u>see</u> Fed.R.Evid. 612, Friant may withdraw Hanson's designation as a testifying expert witness and redesignate a "clean" expert, thereby avoiding having to produce these documents, or Friant may keep Hanson as its designated expert, which will result in disclosure of all documents considered by him. The following documents will be disclosed in the event that Friant retains Hanson as its designated expert: Number 28, 29, 51,[8] 55, 260, 262.[9] Document number 259 will not be disclosed because it is not relevant to the substance of Hanson's opinion.[10]

Steiner Document

---

[8] This document will be disclosed in full because none of it constitutes communicated offers to compromise under Fed. R. Evid. 408.

[9] Friant has withdrawn claims of privilege as to documents numbered 37, 49, 52, 53, 203, 257 and 264.

[10] NRDC's response and corrected response maintain that Friant represented at the hearing that it would withdraw claims of privilege for documents relating to experts McKusick, Herbert and all documents except number 51 for Hanson. The court has reviewed the hearing tape and Friant's August 31st filing to which it refers at the hearing, and concludes that Friant did not waive its assertion of claim of privilege for the documents enumerated herein in regard to Hanson.

1   This document, number 276, is claimed to be protected under the joint defense
2   privilege.  Friant has not listed Mr. Steiner in its supplemental notice of lodgment of expert
3   reports, and has not included any information on or report by this expert.  In plaintiffs'
4   September 9, 2005 response to Friant's supplement briefing regarding the privilege log, plaintiffs
5   do not list this document as one of the documents in Friant's privilege log.  (Plaintiffs' Exh. A.)
6   Friant claims this document concerns subject matter unrelated to this litigation
7   and is unrelated to Steiner's opinion in this case.
8   The document shall not be produced on account of this witness; if germane to
9   other experts, that section shall govern ultimate disclosure.

Documents For Which Friant Has Not Provided Sufficient Information in its Log

11  Documents 22, 23, 24, 25, 27, 48, 58, 66, 168, and 171 are listed in the privilege
12  log but do not contain an author's name.  According to NRDC, Friant has refused to provide the
13  missing information.  This category is described as "Documents that allegedly may contain
14  information transmitted by an Expert."  Friant has not proffered an explanation for the lack of
15  information in its log and makes no argument in support of protecting this category, other than
16  claiming work product, attorney-client privilege, and/or joint defense privilege in its log.
17  A privilege log or evidence submitted in support of a privilege claim must show
18  that the documents claimed to be privileged adhere to the essential elements of the privilege.  In
19  re Grand Jury Investigation, 974 F.2d 1068, 1071 (9th Cir.1992).  For example, at least the
20  following information is needed to determine a claim of attorney client privilege: (a) the attorney
21  and client involved, (b) the nature of the document, (c) all persons or entities shown on the
22  document to have received or sent the document, (d) all persons or entities known to have been
23  furnished the document or informed of its substance, and (e) the date the document was
24  generated, prepared, or dated.  Id. (citing Dole v. Milonas, 889 F.2d 885, 888 n. 3 (9th Cir.1989));
25  see Eureka Fin. Corp v. Hartford Accident & Indem. Co., 136 F.R.D. 179, 183-84 (E.D.Cal.
26  1991) (failure to properly assert a privilege may result in waiver of privilege).  Friant has waived

11

the privilege as these documents, for which it has not provided sufficient information. All of these documents shall be produced.

<u>Documents Transmitted To or From "Non-Retained Experts"</u>

NRDC asserts that designation of the individuals referenced in regard to this group as non-retained experts is improper and they will be moving to strike these designations. NRDC may be under a misconception that an employee who may be an expert in a particular field, but is not paid separately for his expertise, cannot be a testifying Rule 26 expert. Such an individual is still an expert, although not "retained" and the same law outlined above applies to these experts. Friant may be under the misimpression that it did not have to provide Rule 26 reports for its employees who were more than percipient experts, i.e., would be testifying to more than historical opinions and would be testifying to opinions acquired for the purposes of testimony in this litigation. <u>See</u> Discovery Plan Order & Schedule at Section F which clearly defines a purely percipient expert, a Rule 26 expert, and a hybrid, percipient/Rule 26 expert. The latter category would most likely encompass employees or officers.

Nevertheless, Friant does not make an argument or representation that the non-retained experts referenced in their log in regard to these documents have not considered the documents in forming their opinions. Therefore, it will be assumed that these experts have reviewed the following documents and they will be disclosed: 16, 61, 63, 65, 82, 129, 130, 132, 133, 142, 146, 150, 151, 153, 154, 157, 179, 202, 205, 206, 219, 220, 224, 235, 258, 259, 260, 262, 263, 265, 268, 280.

Additionally, NRDC's filing of September 9, 2005 indicates that Friant has withdrawn its claim of privilege over documents 28 and 29 as to Hanson but not as to Deflitch and Welch. Huffman Decl., Exh. A at 1, 2. Friant has not indicated otherwise. Therefore, those documents will be produced when this order becomes final because the privilege is waived as to Hanson.

<u>Six Documents Not Originally Identified</u>

12

At the hearing, the parties were directed to file updates regarding nine documents for which Friant had not listed a recipient and/or an author. On September 7, 2005, Friant filed a response to plaintiffs' supplemental reply brief, representing that it would produce documents numbered 15, 56, and 136, leaving only six documents still in dispute. They are numbered 10, 47, 59, 79, 130 and 147. Plaintiffs have since withdrawn their request for document numbers 10 and 79.

<u>Document number 47</u> - The court will accept Friant's representation that this document was communicated to the attorney in connection with settlement, and presume that this document was not shared with any designated expert. As such, it will not be ordered disclosed. If this presumption is incorrect, Friant must produce this document.

<u>Document number 59</u> - This document contains matters related to settlement negotiations and appears to be attorney-client privileged. It will not be disclosed.

<u>Document number 130</u> - This document has been ordered disclosed as a document transmitted to or from a non-retained expert *supra* because it has been reviewed by a designated expert.

<u>Document number 147</u> - This document is attorney-client privileged and will not be disclosed.

*Conclusion*

Accordingly, IT IS ORDERED that

1. Friant shall submit a statement within ten days indicating whether it will designate any new expert to replace Mr. Hanson, or whether it will continue to designate him and produce the documents as set forth within this order; if Friant decides to continue with Hanson, it shall also disclose the Hanson documents ordered disclosed at the same time;

2. All other documents ordered to be disclosed shall be disclosed within ten days;

3. For those documents for which Friant has withdrawn its claim of privilege but which have not yet been produced, Friant will be held to its stated withdrawal. Those documents shall

1  be produced forthwith.

2  DATED: September 16, 2005

4                                    /s/ Gregory G Hollows
                                     GREGORY G. HOLLOWS
5                                    UNITED STATES MAGISTRATE JUDGE

6  GGH:076
   NRDC1658.prv